UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JEFFREY ROBERT DANALDS,<br>Plaintiff, | ) ) ) | |
| v. | ) ) | 1:18-CV-233-JPK |
| NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>Social Security Administration,<br>Defendant. | ) ) ) ) ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Jeffrey Robert Danalds on July 30, 2018, and a Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of the Social Security Administration [DE 16], filed on October 27, 2018. Plaintiff requests that the March 6, 2018 decision of the Administrative Law Judge denying his claim for disability insurance benefits be reversed and remanded for further proceedings. On December 10, 2018, the Commissioner filed a response, and Plaintiff filed a reply on December 23, 2018. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On September 15, 2016, Plaintiff filed an application for disability insurance benefits, alleging disability beginning August 22, 2016. The application was denied initially and on reconsideration. Plaintiff requested a hearing, and, on December 7, 2017, the Administrative Law Judge (ALJ) held a hearing. In attendance at the hearing were Plaintiff, Plaintiff's attorney, an impartial vocational expert, and Plaintiff's treating therapist. On March 6, 2018, the ALJ issued an unfavorable decision, making the following findings:[1]

---

[1] These are direct quotes of each of the ALJ's bolded findings made at various points throughout the Decision. Internal citations to the Code of Federal Regulations are omitted.

1

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2.      The claimant has not engaged in substantial gainful activity since August 22, 2016, the alleged onset date.

3.      The claimant has the following severe impairments: lumbar degenerative disc disease with sciatica, depression, generalized anxiety disorder, post-traumatic stress disorder (PTSD), and attentive deficit hyperactivity disorder (ADHD).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      After careful consideration of the entire record, the [ALJ found] that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that he can understand, remember and carry out simple instructions and tasks, he can make judgments on simple work related decisions, he can respond appropriately to occasional interactions with the general public, he can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting.

6.      The claimant is unable to perform any past relevant work.

7.      The claimant was born [in 1957] and was 59 years old, which is defined as an individual of advanced age, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching retirement age.

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 22, 2016, through the date of this decision.

(AR 78–87).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is, in fact, disabled but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g).

Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see* 42 U.S.C. § 405(g). The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White*

*v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). "The ALJ has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted).

## DISABILITY STANDARD

To be eligible for disability benefits under the Social Security Act, a claimant must establish that he suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any impairment listed in the regulations as presumptively disabling, (4) whether, if the claimant does not meet a listing, the claimant is unable to perform the claimant's past relevant work, and (5) whether, if the claimant is unable to perform past relevant work, the claimant is unable to perform any work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite his limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001).

## ANALYSIS

In this appeal, Plaintiff challenges the ALJ's decision regarding Plaintiff's mental impairments. Plaintiff argues that the ALJ failed to incorporate Plaintiff's limitation regarding changes in the work setting; failed to properly address Plaintiff's difficulties in concentration, persistence, or pace; and failed to properly weigh the opinion evidence. The Court considers each argument in turn.

### A. Limitation Regarding Changes in the Work Setting

Plaintiff argues that the RFC determination fails to incorporate the ALJ's finding that Plaintiff should have limits on changes in the work place. In the RFC analysis, the ALJ wrote, "There is ample evidence that his mental impairments are severe under the Agency rules and that the claimant should be limited to unskilled tasks *with limits on* public contact, use of judgment, and *changes in the work place*." (AR 84) (emphasis added). Nevertheless, the RFC determination contains no limitation relating to changes in the work place. To the contrary, the RFC provides that Plaintiff "can deal with routine changes in a routine work setting." *Id*. at 80.

The ability to "deal with changes in a routine work setting" is a "work-related mental activit[y] generally required by competitive, remunerative work." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996). And, the record in this case supports the ALJ's determination that Plaintiff's

5

mental impairments limit his ability to adapt to changes in the work place. For example, Plaintiff wrote that it was "very difficult to adjust" to changes in routine. (AR 328). Dr. Horton, a non-examining consultative psychologist, assessed that Plaintiff's "ability to respond appropriately to changes in the work setting" was moderately impaired. *Id*. at 162. Answering a slightly different question, Mr. Swinehart, Plaintiff's treating counselor, indicated in his medical source statement that Plaintiff had a marked impairment in the ability to "respond appropriately to customary work pressures five days a week in a routine work setting." *Id*. at 611.

The ALJ offers no explanation as to how the RFC determination that Plaintiff has the ability to "deal with routine changes in a routine work setting" accommodates the need for a limit on changes in the work place. The inconsistency between the ALJ's finding, which is supported by the evidence of record, and the RFC determination constitutes a failure by the ALJ to build a "logical bridge" that requires remand. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009).

## B. Concentration, Persistence, or Pace

In addition, Plaintiff argues that the ALJ did not construct a logical bridge between the step-three finding that Plaintiff has a moderate limitation in concentration, persistence, or pace and the mental RFC determination. Plaintiff contends that the ALJ did not refer at all to Plaintiff's difficulties with concentration, persistence, or pace in the RFC or explain why the difficulties were not reflected in the RFC. (Opening Br. 12, ECF 16). Plaintiff is partially correct. Although the ALJ addressed some aspects of Plaintiff's moderate limitation in concentration, persistence, or pace in the RFC assessment, the ALJ did not address them all.

The parties agree that, at step three of the sequential analysis, the ALJ found that Plaintiff has a moderate limitation in concentration, persistence, or pace. (AR 79). As noted by the Commissioner, the ALJ based the step-three finding on Plaintiff's testimony that he has problems recalling things and that he is easily frustrated in environments with noise, commotion, and fast

6

paced demands. *See id.* at 79; *see also id.* at 112–13. The ALJ also based the finding on Plaintiff's allegation that he has problems focusing because of ADHD and that he does not finish what he starts. *Id.* at 79; *see also id.* at 279–88, 322–31.

Subsequently, the ALJ determined that Plaintiff has the following mental RFC: "[H]e can understand, remember, and carry out simple instructions and tasks, he can make judgments on simple work related decisions, he can respond appropriately to occasional interactions with coworkers and supervisors, he should avoid work activity requiring interactions with the general public, he can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting." *Id.* at 80.

The RFC is an assessment of what work-related activities the claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *1, 2. The Seventh Circuit Court of Appeals has "repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (quoting *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014); citing *Stewart*, 561 F.3d at 684–85); *see also Winsted v. Berryhill*, — F.3d —, —, No. 18-2228, 2019 WL 494052, at *4 (7th Cir. Feb. 8, 2019).

In *O'Connor-Spinner v. Astrue*, the Seventh Circuit Court of Appeals held that, in most cases, terms like "'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." 627 F.3d 614, 620 (7th Cir. 2010); *see Winsted*, 2019 WL 494052, at *4. This is because the ability to learn how to do a task of a certain complexity is not the same as the ability to do the given task over a sustained period of time. *O'Connor-Spinner*, 627 F.3d at 620. Although no

7

"specific terminology" is required, the hypothetical question posed to the vocational expert must account in substance for the specific limitations of the claimant. *Id*. at 619 (noting that courts have upheld a hypothetical when "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform"); *see also Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt*, 758 F.3d at 856, 858–59; *Stewart*, 561 F.3d at 684; *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008).

In this case, the RFC determination only accounted for some aspects of Plaintiff's moderate limitation in concentration, persistence, or pace. In her discussion of Plaintiff's RFC, the ALJ recognized Plaintiff's difficulties understanding, his irritability, and his problems dealing with others. The ALJ reasoned that Plaintiff's "problems understanding, focusing, and dealing with stress likely preclude the performance of more complex and detailed tasks. His reported irritability and problems dealing with others are further accommodated by limiting him to only occasional interactions with coworkers and supervisors and precluding work activity requiring interactions with the general public." (AR 83). And, after discussing the opinion evidence, the ALJ wrote, "There is ample evidence that his mental impairments are severe under Agency rules and that the claimant should be limited to unskilled tasks with limits on public contact, use of judgment, and changes in the workplace." *Id*. at 84. Plaintiff did not acknowledge this analysis in his briefs. Thus, contrary to Plaintiff's argument, the ALJ did consider some aspects of Plaintiff's moderate impairment in concentration, persistence, or pace.

However, the RFC analysis did not address the other aspects of the moderate limitation in concentration, persistence, or pace, namely Plaintiff's frustration with noise, commotion, and fast paced demands and his habit of not finishing what he starts. The ALJ must explain why these limitations identified at step three are not incorporated in the RFC. Under *O'Connor-Spinner*, the RFC confining Plaintiff to "simple instructions and tasks" and "simple work related decisions"

and limiting social interaction does not capture the limitations that flow from these additional difficulties. As a result, the ALJ did not create a logical bridge between all aspects of Plaintiff's moderate limitation in concentration, persistence, and pace and the mental RFC. This error is further complicated by the inconsistency between the ALJ's finding that Plaintiff should have "limits on . . . changes in the workplace," (AR 84), and the assignment of an RFC with the ability to "deal with routine changes in a routine work setting," *id*. at 80, discussed above in Part A. As a result, the vocational expert did not know to "eliminate positions that would pose significant barriers to someone with [Plaintiff's] depression-related problems in concentration, persistence, and pace." *O'Connor-Spinner*, 627 F.3d at 620.

The Commissioner's argument that the RFC and hypothetical "capture" Plaintiff's moderate difficulties by limiting his focus to simple tasks with minimal interaction and routine changes is not well taken in light of the several facets that make up Plaintiff's impairment. (Resp. 8, ECF 17) (discussing *Yurt*, 758 F.3d at 857). Nor is it enough that the ALJ accurately discussed many medical records; identified several occasions on which Plaintiff had normal mental status exams; or noted that consultative examiner Dr. Bingi found that Plaintiff was bright and insightful, understood instructions easily, performed well on mental status exam, and was independent in daily living. *See id*. at 6. That discussion did not address Plaintiff's frustration with noise, commotion, and fast paced demands or his habit of not finishing what he starts, all of which impact persistence and pace. Contrary to the Commissioner's suggestion, Plaintiff is not asking that the RFC or the hypothetical posed to the vocational expert contain the exact words "concentration, persistence, or pace" but rather that the substance of the RFC respond to the practical limitations

9

that result from all aspects of Plaintiff's moderate limitation in concentration, persistence, or pace. *See id*. at 8. Remand is required to allow the ALJ to provide this explanation in the RFC discussion.

### C. Weight to Opinion Evidence

An ALJ "must consider all medical opinions in the record." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); 20 C.F.R. § 404.1527(b), (c). Unless a treating source's medical opinion is given controlling weight, an ALJ weighs each medical opinion based on the following factors: examining relationship, treatment relationship (including the length and the nature and extent of the treatment relationship), supportability, consistency, specialization, and other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c). More weight is given to the medical opinion of a source who has examined the Plaintiff than one who has not. 20 C.F.R. § 404.1527(c)(1). Opinions from medical sources who are not acceptable medical sources are also considered using the same set of factors. 20 C.F.R. § 404.1527(f). Plaintiff argues that the ALJ failed to comply with 20 C.F.R. § 404.1527 by not properly considering and/or giving the proper weight to the opinions of Dr. Ross, Mr. Swinehart, and Dr. Bingi.

1.  Dr. Ross

Plaintiff criticizes the ALJ's discussion of Dr. Ross's opinion because the ALJ did not assign the opinion a specific weight and because the reasons the ALJ gave for apparently discounting Dr. Ross's opinion are insufficient.

In discussing Plaintiff's medical history, the ALJ first noted that Dr. Ross, a psychologist, evaluated Plaintiff in February 2017. (AR 83). The ALJ noted Dr. Ross's comment that, on testing, Plaintiff evidenced an unusual degree of concern about physical functioning and health matters as well as a negative self-concept and intense suicidal ideation. *Id*. Later in the decision, in the context of weighing opinion evidence, the ALJ noted that Dr. Ross opined that Plaintiff "is currently experiencing a significant degree of depression causing present impairment and significant

10

dysfunction in his life." *Id*. at 85. The ALJ noted that Dr. Ross "conceded that these psychiatric problems were present even before [Plaintiff's] termination from Kraft" and opined that he would consider the claimant to be a disabled individual who will need continued psychiatric care and counseling. *Id*. The ALJ then noted that Dr. Ross is an examining source, not a treating psychologist, and remarked that Dr. Ross's statements are "somewhat vague and conclusory." *Id*. The ALJ commented that Dr. Ross "opines in an area reserved to the Commissioner" and "does not provide a nexus between objective findings and precise function-by-function limitations applicable in a workplace." *Id*. The ALJ found that Dr. Ross failed "to offer sufficient detail" in regard to the "degree" of impairment and dysfunction due to Plaintiff's mental impairments. The ALJ concluded that Dr. Ross's assertion that Plaintiff's problems were present before the termination of his employment at Kraft "undercuts an allegation of disability as it shows the claimant capable of working full time above substantial gainful activity levels with his symptoms." *Id*. The Court considers each of Plaintiff's criticisms of this analysis in turn.

First, Plaintiff argues that the ALJ is not permitted to reject or reduce the significance of Dr. Ross's opinion that Plaintiff is "a disabled individual." *Id*. at 591. Plaintiff is correct that, when a medical source includes a statement that a claimant is "disabled" or "unable to work," the ALJ must "review all of the medical findings and other evidence that support a medical source's statement that [the claimant] is disabled." 20 C.F.R. § 404.1527(d)(1), (2). However, an ALJ is also "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" in making the RFC determination. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Nor is an ALJ required to give any special significance to opinions on an issue reserved to the Commissioner, such as a final determination of disability. 20 C.F.R. § 404.1527(a)(1), (d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). The Court finds

11

that the ALJ properly considered Dr. Ross's statement regarding disability in the context of the facts as a whole.

Next, Plaintiff argues that the ALJ made a factual error when the ALJ interpreted Dr. Ross's statement that Plaintiff's "psychiatric problems were present even before his termination from Kraft" to mean that "it shows the claimant was capable of working full time above substantial gainful activity levels with his symptoms." (AR 85). Plaintiff notes that he struggled with mental health issues for many years but contends that the evidence shows that his mental health concerns did not begin to affect his ability to work until April or May 2016, which is shortly before his employment was terminated in August 2016. Although the Court does not perceive a factual error by the ALJ in the ALJ's restatement of Dr. Ross's opinion on this issue, the ALJ is directed on remand to further explain the meaning she gives to this statement by Dr. Ross in the context of Plaintiff's 2016 mental health records.

Third, Plaintiff argues that, even though the ALJ correctly noted that Dr. Ross was not a treating source, Dr. Ross also "cared for" Plaintiff because Dr. Ross followed up by calling Plaintiff once about his suicidal tendencies. The one phone call does not substantially change the nature of Dr. Ross as an examining source. However, Plaintiff also contends that the ALJ did not properly weigh Dr. Ross's opinion using the six criteria in 20 C.F.R. § 404.1527(c) by not considering the battery of psychological tests conducted by Dr. Ross, the fact that Dr. Ross reviewed records, and the consistency of Dr. Ross's opinion with the opinion of Plaintiff's therapist, Mr. Swinehart, and with the diagnoses by Dr. Bingi. The Court agrees that the ALJ did not articulate her assessment of these factors as to Dr. Ross. On remand, the ALJ is directed to consider each of these factors as to Dr. Ross.

*2. Mr. Swinehart*

The ALJ recognized that Mr. Swinehart, Plaintiff's treating therapist, testified at the hearing. The ALJ noted several specific aspects of Mr. Swinehart's testimony as well as his multiple written opinions, including a 2017 medical source statement, all of which described Plaintiff's impairments as "marked" or "extreme." (AR 84). The ALJ gave Mr. Swinehart's testimony and written opinion "some weight." *Id*. In doing so, the ALJ noted that Mr. Swinehart is a treating source but that he is not a doctor or licensed psychologist. *Id*. However, the ALJ found it important that Mr. Swinehart's finding of marked and extreme limitations was undermined by findings on multiple mental examinations as well as a lack of any inpatient or urgent treatment for mental impairments. *Id*. The ALJ found that Mr. Swinehart's findings were not supported by citations to objective evidence, specific examples, or a detailed and precise narrative citing specific clinical findings. *Id*. at 84–85. The ALJ found that Mr. Swinehart's opinions were not supported by other opinion evidence from acceptable medical sources but rather were countered by findings from consultative examiners and the state agency doctors. *Id*. at 85. Finally, the ALJ noted Mr. Swinehart's testimony that he primarily considered Plaintiff's ability to return to his past work in forming his opinions, but Mr. Swinehart did not have credentials in vocational rehabilitation. *Id*.

Plaintiff argues that Mr. Swinehart's opinion of Plaintiff's condition in the summer of 2016 is generally consistent with the medical record, but Plaintiff does not identify any specific record or finding that is consistent with Mr. Swinehart's opinion. Generally, the ALJ considered and discussed all of the factors in 20 C.F.R. § 1527(c) in weighing Mr. Swinehart's opinion, and the Court will not reweigh the evidence. However, because the Court is remanding on other grounds, the Court directs the ALJ to consider and discuss the fact that both Dr. Ross and Mr. Swinehart agree that Plaintiff's mental impairments prevent him from working.

*3.    Dr. Bingi*

In her review of Plaintiff's medical records, the ALJ noted several of Dr. Bingi's December 2016 consultative exam findings. (AR 82). However, in weighing Dr. Bingi's opinion, the ALJ noted only that Dr. Bingi wrote that Plaintiff "came across as bright and insightful," that he performed well on mental status exam, and that he is capable of managing his benefits independently. *Id*. at 85. The ALJ gave those findings considerable weight because they were offered by an examining source and were "supported by the objective findings." *Id*. The ALJ also found Dr. Bingi's findings "consistent with a range of mental status exams elsewhere in the record as well as by other persuasive opinion evidence." *Id*.

Plaintiff argues that it was error to give Dr. Bingi's opinion "considerable weight" given that Dr. Bingi's findings were limited to those noted in the previous paragraph and because the ALJ did not mention Dr. Bingi's other observations that favor Plaintiff's claim of disability, namely that Plaintiff's "affect was varied and at times he appeared to be distressed and frustrated." *Id*. at 552. Plaintiff also argues that Dr. Bingi did not offer an opinion regarding how Plaintiff's severe impairments of major depressive disorder, with continued suicidal ideation, and PTSD would affect him in the work place. The Commissioner did not respond to these arguments. On remand, the ALJ is directed to consider Dr. Bingi's opinions that support Plaintiff's claim of disability and the impact of Dr. Bingi's opinion on Plaintiff's ability to work.

Plaintiff further contends that, given the similarities between Dr. Ross and Dr. Bingi, the ALJ erred by failing to explain what weight was assigned to Dr. Ross in comparison with the "considerable weight" given to Dr. Bingi. Plaintiff notes that, like Dr. Ross, Dr. Bingi is an acceptable medical source, is not a treating source, and is an examining source. However, unlike Dr. Ross, who reviewed chart notes of some of Plaintiff's other medical providers, Dr. Bingi did not disclose whether she reviewed any medical records. And, unlike Dr. Ross, Dr. Bingi did not

14

perform objective psychological testing to assess Plaintiff's current level of emotional and behavioral functioning. On remand, if the ALJ assigns greater weight to Dr. Bingi's opinion than to Dr. Ross's opinion, the ALJ is directed to address these similarities and differences in weighing the opinions.

Finally, Plaintiff argues that the ALJ did not identify which "objective findings" support Dr. Bingi's opinions, which mental status exams elsewhere in the record are consistent with Dr. Bingi's findings, or what "other persuasive opinion evidence" parallels Dr. Bingi's findings. On remand, the ALJ is directed to identify the supporting references in weighing Dr. Bingi's opinion.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in the Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of the Social Security Administration [DE 16], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 25th day of February, 2019.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT